No. 11-55397

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KOFI OBENG-AMPONSAH
Plaintiff/Appellant,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEM INC., et al
Appellees/Defendants

Appeal from the United States District Court,
Central District of California
Case no. below 09-cv-00096-GHK-JCx

## REPLACEMENT OPENING BRIEF OF APPELLANT

LAW OFFICES OF LARRY R. GLAZER
Nicolette Glazer, Esq.
1875 Century Park East,
Suite #700
Century City, CA 90067
Tel: (310) 407-5353
Fax: (310) 407-5354
Nicolette@glazerandglazer.com

ATTORNEY FOR APPELLANT
(appointed pro-bono counsel)

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant, Kofi Obeng-Amponsah, respectfully requests oral argument in this matter and believes that, given the factual complexity and novelty of the issues presented on appeal, oral argument will assist the Court in its analysis of this case.

## TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT............................................2

JURISDICTIONAL STATEMENT.................................................................10

ISSUES PRESENTED FOR REVIEW..............................................................11

STATEMENT OF THE CASE......................................................................12

FACTS..............................................................................................15

SUMMARY OF THE ARGUMENT.................................................................20

ARGUMENT.........................................................................................22

    I. Standard of Appellate Review...............................................22

    II. Standard for Adjudicating a Motion to Dismiss............................23

    III. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S FDCPA, TILA, RESPA, HOEPA, FCRA, AND RICO CLAIMS WITH.......24 PREJUDICE.........................................................................24

        A. *Merritt v. Countrywide* **compels a reversal of the premature dismissal of Mr. Obeng-Amponsah's TILA rescission claim............24**

        B. **Plaintiff's claims for damages under TILA were not barred by the one year statute of limitations.................................................24**

            1. The TILA statute of limitations.....................................26

            2. CHF's status as a servicer without ownership rights..................28

        C. **Plaintiff's claims for damages under HOEPA were not barred by the one year statute of limitations.........................................28**

        D. **Plaintiff has pleaded sufficient facts, which, if proven, would entitle him to relief under the FDCPA....................................29**

            1. Defendants are debt collectors not exempt from liability under the FDCPA. ....................................................................30

            2. Defendants are debt collectors not exempt from liability under Section 1692f(6). ....................................................35

3.Defendants were seeking to collect a debt....................................35

**E.The District Court erred In dismissing Plaintiff's RESPA section 6 claim.** ..................................................................................**38**

**F.The District Court Erred in Dismissing Plaintiff's FCRA claims.** **39**

**G.Mr. Obeng-Amponsah has pleaded a continuing enterprise and sufficient proximate cause to survive a Rule 12(b)(6) motion on his RICO claim.** ..............................................................................**40**

CONCLUSION....................................................................................42

CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 32.................... 42

CERTIFICATION OF RELATED CASES............................................... 43

CERTIFICATE OF SERVICE................................................................ 43

**Cases**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc*
2011 WL 2690437, at *2 (N.D. Cal., July 8, 2011)............................................ 31

*Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*,
2007 U.S. Dist. LEXIS 62208 (N. D. Ohio 2007) ............................................ 20

*Bailey v. Sec. Nat'l Servicing Corp.,*
154 F.3d 384 (7th Cir. 1998) ....................................................................... 29, 35

*Belini v. Wash. Mut. Bank, FA*,
412 F.3d 17 (1st Cir. 2005)................................................................................ 26

*Bell Atlantic Corp. v .Twombly*,
550 U.S. 544 (2007)............................................  ............................................ 20

*Boulware v. Crossland Mortg. Corp.*,
291 F.3d 261 (4th Cir. 2002) ........................................  ...................... 46

*Brady v. Dairy Fresh Products Co.*,
974 F.2d 1149 (1992)........................................................  .................................... 47

*Bridge v. Phoenix Bond & Indemnity Co.*,
553 U. S. ___ (2010) ........................................................................................ 1

*Cervantes v. United States*,
330 F.3d 1186 (9th Cir. 2003). .......................................................................... 21

*Chomilo v. Shapiro,*
2007 U.S. Dist. LEXIS 67826, 2007 WL 2695795, at *6
 (D. Minn. Sept. 12, 2007................................................................................... 32

*Erickson v. Pardus*,
551 U.S. 89 (2007).... ...............................  ...................................................... 20

*Ford Motor Credit Co. v. Milhollin*,
444 U.S. 555 (1980).........................................................,.................................. 22

*Freeman v. Quicken Loans, Inc.*,
626 F.3d 799 (5th Cir. 2010) ................................................................ 45

*Frey v. Gangwish*,
970 F.2d 1516 (6th Cir. 1992). ............................................................ 28

*Glazer v. Chase Home Finance LLC*,
704 F.3d 453 (6th Cir. 2013). .............................................................. 28

*Haug v. Bank of Am., N.A.*,
317 F.3d 832 (8th Cir. 2003) ............................................................... 46

*Heintz v. Jenkins*,
514 U.S. 291 (1995)............................................................................. 28

*Hodges v. Sasil Corporation*,
189 N.J. 210 (2007). ........................................................................... 28

*Hulse v. Ocwen Federal Bank*,
195 F. Supp. 2d 1188 (D. Or. 2002) .................................................... 42

*Johnson v. Riddle*,
305 F.3d 1107 (10th Cir. 2002) ........................................................... 28

*Kaltenbach v. Richards*,
464 F.3d 524 (5th Cir. 2006). ............................................................. 42

*King v. State of California*,
784 F.2d 910 (1986)............................................................................ 25

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ............................................................ 19

*Kruse v. Wells Fargo Home Mortg., Inc.*,
383 F.3d 49 (2d Cir. 2004)................................................................... 45

*Krzalic v. Republic Title Co.*,
314 F.3d 875 (7th Cir. 2002). ............................................................. 46

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ................................................................. 20

*Martinez v Wells Fargo Home Mortg., Inc.*,
598 F.3d 549 (9th Cir. 2010) ................................................................. 45

*Mayer v. Mylod*,
988 F.2d 635 (6th Cir. 1993). ................................................................ 21

*Maynard v. Cannon*,
2008 U.S. Dist. LEXIS 46768, 2008 WL 2465466, at 4
(D. Utah June 16, 2008)................................................................... .......... 42

*McDaniel v. South and Assc.*,
325 F. Supp. 2d 1210 (D. Kan. July 1, 2004*)* ....................................…....... 44

*McKenney v. Caldwell Properties. Inc*.,
548 F.3d 496 (7th Cir. 2008) ................................................................. 29

*Medrano v. Flagstar Bank*, *FSB et al.*,
2012 U.S. App. LEXIS 25274 (9th Cir. 2012.) ...................................…....... 47

*Merritt v. Countrywide Fin. Corp.*,
2014 *WL* 3451299 (9th Cir. Jul. 16, 2014) ............................................ 22

*Nat. City Bank, N.A. v. Prime Lending, Inc.*,
2010 WL 2854247, at *2 (E.D.Wash. July 19, 2010)). ........................................ 51

*Peeples v. Blatt*,
*2001 WL 921731, at *3 (N.D. Ill. Aug. 15, 2001)*.................................................. 44

*Perry v. Stewart Title Co.*,
756 F.2d 1197 (5th Cir.1985) ................................................................. 39

*Piper v. Portnoff Law Assocs.*,
396 F.3d 227 (3d Cir. 2005)................................................................. ............................ 43

*Price v. Seydel*,
961 F.2d 1470 (9th Cir. 1992). ............................................................. 6

*Ricotta v. Ocwen Loan Servicing, LLC,*
2008 WL 516674, 6 (D.Colo. 2008) .................................................................... 29

*Romea v. Heiberger & Assocs.,*
163 F.3d 111, 116 (2d Cir. 1998)........................................................................ 43

*Santiago v. GMAC Mortg. Corp., Inc.,*
417 F.3d 384 (3d Cir. 2005)................................................................................ 45

*Schlosser v. Fairbanks Capital Corp.,*
323 F.3d 534 (7th Cir. 2003) .............................................................................. 29

*Socop-Gonzalez v. I.N.S.,*
272 F.3d 1176 (9th Cir. 2001) .................................................. .......................... 25

*Valdez v. America's Wholesale Lender,*
2009 U.S. Dist. LEXIS 118241 at *12-13
(N.D. Cal. Dec. 18, 2009).................................................................................... 26

*Wadlington v. Credit Acceptance Corp.,*
76 F.3d 103, 106 (6th Cir. 1996) ........................................................................ 35

*Wilson v. Draper & Goldberg,*
443 F.3d 373 (4th Cir. 2006) .............................................................................. 33

*Yamamoto v. Bank of New York,*
329 F.3d 1167, 1173 (9th Cir 2003) ................................................................... 22

**Statutes**

12 U.S.C. §§2601–17............................................................................................ 6
12 U.S.C. §2605(e); ........................................................................................... 47
12 U.S.C. §2605(i)(2): ....................................................................................... 38
12 U.S.C. §2607(b). ........................................................................................... 34
15 U.S.C. §§1601–93........................................................................................... 6
15 U.S.C. §1601(a). ........................................................................................... 22
15 U.S.C. §1635(b), ........................................................................................... 25
15 U.S.C. 1640(e). ............................................................................................. 24
15 U.S.C. §§1692(a) & (k).................................................................................... 6
15 U.S.C. §1692a(3) ........................................................................................... 27
15 U.S.C. §1692a(6) ................................................... ........................................ 27

15 U.S.C. §1692f(6)........................................................................... 25, 41

18 U.S.C. §1962(c) ............................................................................ 38

18 U.S.C. §1964(c). ........................................................................... 38

28 U.S.C. §1291.................................................................................. 6

28 U.S.C. §1331.................................................................................. 6

**Other Authorities**

S. Rep. No. 95-382, at 2 (1977) ......................................................... 28

S.Rep. No. 95-382, 95th Cong., 1st Sess. 3,

*reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1698 ............................. 39

JURISDICTIONAL STATEMENT

Plaintiff seeks review of the 8 February 2011 Rule 54(b) final judgment dismissing Mr. Obeng-Amponsah's claims against Appellees, the orders dated 21 December 2009, 27 August 2010, and 18 October 2010 denying his requests for leave to amend the complaints and dismissing his FDCPA, TILA, RESPA, HOEPA, FCRA, RICO, and fraud based claims with prejudice and the 8 February 2011 order denying Mr. Obeng-Amponsah's motion to set aside the dismissal. Appellant filed a timely notice of appeal on 9 March 2011.

The United States District Court for the Central District of California had original subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§1692(a) & (k), 15 U.S.C. §§ 1601–93,  12 U.S.C. §§ 2601–17, and 28 U.S.C. §1331. This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. §1291.

This matter is an appeal from a final appealable judgment because the 8 February 2011 order was issued pursuant to Rule 54(b) and disposed of all claims between Plaintiff and Appellees as they pertain to the claims asserted against Chase Home Finance LLC, Mortgage Electronic Registration Systems, Inc., U.S. Bank National Association as trustee for Lehman Bothers Structured Asset Investment Loan Trust SAIL 2005-5; First American LoanStar Trustee Services, and Home Loan Advisors. *See Williams v. Boeing Co.*, 681 F.2d 615, 616 (9th Cir.

1982) (holding that time to appeal begins to run upon entry of judgment under Rule 54(b)).

ISSUES PRESENTED FOR REVIEW

1.      Whether *Merritt v Countrywide* compels a reversal of the dismissal of Plaintiff's rescission claim under TILA where he did not plead or tender the value of his loan.

2.      Whether the District Court committed reversible error by dismissing Plaintiff's claims for damages as violative of the statute of limitations stated in TILA.

3.      Whether the District Court committed reversible error by holding that none of the named Defendants are debt collectors.

4.      Whether the district court erred in dismissing Plaintiff's Section 8 RESPA claims and the HOEPA because equitable tolling is not available under the fact of this case.

5.      Whether the district court erred in dismissing Plaintiff's claim under Section 6 of RESPA because he failed to plead actual injury.

6.      Whether the district court erred in dismissing Plaintiff's claim under FCRA without a leave to amend where the court found that the factual allegations were ambiguous.

6.      Whether the district court erred in dismissing Plaintiff's claim under

RICO because he failed to plead a contiuing enterprise sufficient to show proximate causation for a RICO injury.

STATEMENT OF THE CASE

On 14 January 2009 Mr. Obeng-Amponsah filed a complaint against Finance America LLC; Chase Home Finance LLC [hereinafter 'CHF']; Mortgage Electronic Systems Inc. [hereinafter 'MERS']; Lehman Brothers Structured Asset Investment Loan Trust Sail 2005-5; U.S. Bank National Association [hereinafter 'U.S. Bank']; First American Loanstar Services [hereinafter 'LoanStar']; and Home Loan Advisors [hereinafter 'HLA'] (ECF Doc. #1, 3). On 13 May 2009 Mr. Obeng-Amponsah filed his First Amended Complaint in which he asserted *inter alia* claims under the Federal Debt Collection Practices Act [hereinafter 'FDCPA'], Truth in Lending Act [hereinafter 'TILA'], Real Estate Settlement Procedures Act [hereinafter 'RESPA'], Home Ownership and Equity Protection Act [hereinafter 'HOEPA'], Fair Credit Reporting Act [hereinafter 'FCRA'], Racketeer Influenced and Corrupt Organizations Act [hereinafter 'RICO'], and causes of action for civil fraud, concealment of material facts, and civil conspiracy all stemming from Defendants' unlawful and abusive lending and debt collection practices pertaining to a mortgage loan dated 22 December 2004. (Appellant's Appendix [hereinafter 'AA'] volume 1 at 0019-111).

On 1 June 2009 Defendants CHF, MERS, U.S. Bank as trustee for the SAIL filed an FRCP Rule 12(b)(6) motion to dismiss. (AA 1:112-143)

On 21 December 2009 Hon. District Court Judge King (1) granted Defendants' motion with respect to Mr. Obeng-Amponsah's FDCPA claim against MERS and U.S. Bank, the TILA damages claim, the RESPA claim, the HEOPA claim, the FCRA claim, and the RICO claims.

On 17 February 2010 Mr. Obeng-Amponsah filed a Second Amended Complaint in which he incorporated by reference his original complaint, attempted to amend his claims, and attempted to add additional claims. (AA 4:719-822)

On 8 March 2010 Defendants filed another motion to dismiss for failure to state a claim in which they restated their previous arguments. (AA 5:897-907) Defendants also filed a Request for Judicial Notice in support of their motion. (AA 4:828)

On 10 May 2010 Hon. Judge King ordered that Plaintiff either voluntarily dismiss his remaining federal claims or file a motion seeking a leave to file a Third Amended Complaint.

On 26 July 2010 Mr. Obeng-Amponsah filed his Third Amended Complaint but did not include a motion seeking a leave to amend. (ECF Doc. #79)

On 29 July 2010 Judge King deemed the lodged Third Amended Complaint as filed but re-affirmed that all claims dismissed on 21 December 2009 shall remain dismissed. (ECF Doc. #80)

On 30 July 2010 Mr. Obeng-Amponsah filed a motion for leave to file a Fourth Amended Complaint and appended to the motion the proposed complaint. (AA 5:1040-1187)

On 7 September 2010 Defendants filed another motion to dismiss restating the same arguments raised in their previous two motions to dismiss. (AA 6:1276-1304)

With his Third and Fourth Amended Complaints Mr. Obeng-Amponsah filed motions for reconsideration of the previously dismissed federal claims. The Court denied both requests. (ECF Doc No. #93)

On 18 October 2010 the Court dismissed with prejudice all claims against CHF, MERS, and U.S. Bank. (ECF Doc. No. #96) On the same date the court issued an Order to Show Cause to Plaintiff why the remaining defendants should not be dismissed for failure to prosecute and/or failure to serve process in accordance with FRCP, Rule 4(m). (*Id*.)

On 8 November 2010 Mr. Obeng-Amponsah filed a motion to set aside the dismissal pursuant to FRCP, Rule 60. (AA 7:1382 et seq.)

On 14 December 2010 Judge King denied Mr. Obeng-Amponsah's Rule 60 motion.

On 27 January 2011 Mr. Obeng-Amponsah filed another motion for reconsideration and a "peremptory challenge" against Hon. Judge King. (ECF Doc. No. #113) The matter was liberally construed as a recusal motion and was randomly assigned to Hon. Judge Manuel Real for decision. (ECF Doc. # 114)

On 4 February 2011 Hon. Judge Real denied the recusal motion. (ECF Doc. # 116)

On 8 February 2011 Judge King issued a Rule 54(b) judgment based on the 21 December 2009 and 18 October 2010 orders. (ECF Doc. No. 118)

FACTS

In 1981 Mr. Obeng-Amponsah purchased a residential property located at 6735 Pasito Avenue, Alta Loma, California [hereinafter 'Pasito Ave Property']. (Appellant's Appendix [hereinafter 'AA') Volume 1 at 22)

From 2002 until December 2004 Plaintiff had "a 15-year fixed interest rate mortgage loan" with Golden State Mortgage. (AA 1:23) In October 2004 Mr. Obeng-Amponsah's loan balance was approximately $73,000.00 resulting in a monthly mortgage payment of $860.00. (*Id*.)

On or about 8 October 2004 Mr. Obeng-Amponsah received an unsolicited loan refinance offer from Bay Capital Corporation. (*Id.)* Bay Capital Corporation,

through Home Loan Advisors [hereinafter 'HLA'], represented to Mr. Obeng-Amponsah that based on his credit and equities he would qualify for a "lower interest rate loan fixed for 30 years" of up to $300,000.00. (AA 1:23:¶20-21) Although Plaintiff intended to seek refinancing for only $80,000.00, HLA induced him to accept "a trust deed loan with cash out" for $200,000.00 with an interest of 6.250% and a promised monthly payment of less than $1,700 per month. (AA 1:23-24 para21-22)

On 26 October 2004 Mr. Obeng-Amponsah signed the Uniform Residential Loan Application prepared by HLA. (AA 1:55-57) On the same date Mr. Obeng-Amponsah received and signed a Truth In Lending Disclosure Statement (TILDS) showing an interest rate of 6.250%, a loan amount of $200,000.00, and a "proposed monthly payment of $1,231.43." (AA 1:59-61)

On or about 17 December 2004 Mr. Obeng-Amponsah received a telephone call from HLA's representative who informed Plaintiff that the lender, Finance America LLC, had approved a fixed interest loan in the amount of $260,000.00 with an interest of 6.125%. (AA 1: 24 para 24) On 18 December 2004 HLA faxed to Plaintiff an amended TILDS reflecting the terms of the new loan offer. (AA 1: 104-11)

Mr. Obeng-Amponsah obtained a better refinance offer and on 21 December 2004 he called HLA to cancel the application pending with Finance America LLC.

(AA 1: 25, ¶26) Fred Castillo promised to engage in negotiations with Finance America LLC on behalf of Plaintiff for the purpose of obtaining better terms. *Id*. On or about 22 December 2004 Fred Castillo informed Plaintiff that Finance America LLC had agreed to reduce the interest rate to 5.990% resulting in a proposed monthly payment of $1,557.16. (AA1:25,¶¶ 27-28)

On 22 December 2004 Fred Castillo personally drove to Mr. Obeng-Amponsah's residence to obtain his signatures on the mortgage refinance documents. *Id*.

In reviewing  the documents Mr. Obeng-Amponsah discovered several discrepancies in the previously disclosed loan terms, including but not limited to a statement of a higher interest rate, an adjusted interest rider, and an arbitration rider. (AA 1: 25).  Mr. Obeng-Amponsah unequivocally rejected the additions foisted upon him by AHL. *Id*. AHL agreed to amend the documents, including to reduce the lender origination fee stated in the TILDS. *Id*. In reliance to said promises Mr. Obeng-Amponsah apparently executed a promissory note for the benefit of Finance America LLC but never received a copy of the note. (AA 5: 913-937, 1088) Mr. Obeng-Amponsah alleges that, prior to closing on his loan, he was not provided with disclosures required by TILA, including but not limited to (1) a three days Notice of Right to Rescission; (2) the true interest rate to be charged; (3) the true and correct good faith estimate; and (5) the true identity of the lender. (AA

1:36).

On 22 December 2004 Mr. Obeng-Amponsah also executed a deed of trust for the benefit of Finance America LLC. (AA 1:63-91) The Deed of Trust was notarized on 24 December 2004. (AA 1:91) The deed of trust was recorded on 5 January 2005 and refers to a note in the amount of $260,000. (AA 1:63, 77) The deed of trust names Finance America LLC as the lender-creditor, Julia L. Greenfield Esq. as the trustee, and MERS as the nominee for the lender and the beneficiary under the deed of trust. (*Id*.) The Fixed/Adjustable Rate rider also executed on 22 December 2004 and referred to in the recorded deed of trust states the initial rate as being 5.990% with adjusted rates not to exceed 11.990% (AA 4:0834-53) Plaintiff denies ever signing the Adjustable Rate rider. (AA 5:1081)

Mr. Obeng-Amponsah asserts that MERS was "the co-maker of the loan." (AA 5:1082, para 34, 11:2257)

Ocwen Bank was named and acted as the servicer for the loan until 31 March 2005. (AA 5:1083) Upon the transfer of servicing from Ocwen to CHF some of Mr. Obeng-Amponsah's timely monthly payments were misapplied. (AA 1854-56, 1862) After the loan was erroneously declared in default by the holder of the debt CHF acquired the default servicing rights over the Obeng-Amponsah loan. (Id.) On 25 April 2006 CHF authorized First American Loanstar Trustee Services [hereinafter "Loanstar'] to record a notice of default. (AA 1:213-215) The notice of

default asserts that Mr. Obeng-Amponsah owed $7,818.21 based on obligations "in favor of" MERS solely as nominee for Finance America LLC. *Id*.

In December 2006 Mr. Obeng-Amponsah received a letter from CHF advising him that his interest rate would be adjusted to 10.875% effective 1 February 2007. (AA 5:1083, para 37) The rate adjustment increased Plaintiff's monthly mortgage payment from $1,557.16 to $2,396.77. (5:1089 para 62) Since he had accepted a 30-years fixed rate loan Mr. Obeng-Amponsah promptly contacted CHF to dispute the rate adjustment. *Id*.

On 9 May 2007, while the loan was already in default, MERS purported to convey its interest in the deed of trust, together with the note it secured, to U.S. Bank as trustee for SAIL. (AA 5;939, 6:1336).

On 10 May 2007 U.S. Bank asserted that its was the "current Beneficiary" under the deed of trust. (AA 5:861). Thus, U.S. Bank as the trustee for the SAIL, and acting trough CHF as its attorney in fact, substituted NDEx West LLC in place of the original trustee Julia Greenfield Esq. (id.)

On 28 February 2008 MERS asserted that it was once again the current beneficiary under the DOT. (AA 5:867) As such MERS named Lonstar as the trustee instead of the original trustee Julia Greenfield Esq. *Id*.

On 29 February 2008 Loanstar as an agent for the unnamed beneficiary under the DOT recorded a notice of default claiming that Plaintiff owed

$10,773.06 and directed the recipient to contact CHF c/o Loanstar to obtain itemization of the fees to be paid to stop the foreclosure. (AA 5:864-65) The Notice of Default is signed by Wendy Randall on behalf of First American Title Insurance Company, the attorney in fact for Loanstar. *Id.*

On June 2008 CHF send a reinstatement quote to Plaintiff asserting that Mr. Obeng-Amponsah owed $7,752.72, not $10,773.06 as previously claimed. (AA 1254)

On 28 June 2008 First American Title Insurance Company and Loastar recorded a Notice of Trustee's Sale. (AA5:870)

On 5 February 2009 U.S. Bank as trustee for SAIL granted, assigned, and transferred to MERS the DOT *and the note*. (AA 5:872)

On 9 February 2009 MERS granted, assigned, and transferred back to U.S. Bank as the trustee for SAIL the DOT *and the note*. (AA 5:874)

On 13 February 2009 Loanstar conveyed the property to U.S. Bank as trustee for SAIL based on the trustee's deed upon sale executed on 10 February 2009. (AA 5:876)

## SUMMARY OF THE ARGUMENT

The district court granted Defendants' successive motions to dismiss resulting in the dismissal with prejudice of all of Plaintiff's claims against Appellees. The court's reasons for rejecting Plaintiff's allegations and claims were

widely varied and often confusing and contradictory.

The district court improperly altered the sequence of rescission procedures under TILA in requiring Plaintiff to plead and prove an ability to tender the value of the loan at the pleading stage. The district court disregarded Plaintiff's allegations that he did not receive material disclosures to dispose of Plaintiff's entitlement to equitable tolling

The district court accepted Defendants' argument that if they label themselves 'a mortgage servicer' then they should be entitled to a *per se* exclusion from coverage of the FDCPA regardless of their activities or the regularity of their collection practices. Appellant submits that the court's approach disregards the record and the applicable law. *First*, the FDCPA does not contain an exception for mortgage servicers and default service providers. Rather, an entity that "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" and is not specifically exempted by the statute is a 'debt collector' subject to the provisions of the Act. *See* 15 U.S.C.A. §1692a(6)). In addition, repossessors and persons in a business "the principal purpose of which is the enforcement of security interests," are considered to be "debt collectors" for purposes of 1692f(6). *See* 15 U.S.C.A. §1692a(6). Appellant submits that whether Defendants are 'debt collectors' is a mixed question of law and fact not properly decided by a motion to dismiss.

Defendants invoke F.R.C.P 12(B)(6) but in fact seek adjudication of the issue on the merits rather than challenging the sufficiency of Plaintiff's complaint.

Finally, the court misapplied the RICO statute by disregarding the well-pleaded factual allegations asserting that Defendants' predicate acts of mail and wire fraud caused Mr. Obeng-Amponsah to pay fees to Defendants that were fabricated, unearned, and/or unauthorized. The RICO injury alleged by Mr. Obeng-Amponsah is straightforward and directly traceable to Defendants' continued fraudulent acts and practices.

## ARGUMENT

### I.    STANDARD OF APPELLATE REVIEW

A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is reviewed *de novo*. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Appellate review is generally limited to the contents of the complaint and those attachments that were referenced in the complaint. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

II.  STANDARD FOR ADJUDICATING A MOTION TO DISMISS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint and should be granted only when "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *See Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ*., 2007 U.S. Dist. LEXIS 62208 (N. D. Ohio 2007) (quoting *Bell Atlantic Corp. v .Twombly*, U.S., 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)

In *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), decided two weeks after *Twombly*, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id*. (citing *Twombly*, 127 S. Ct. at 1965); *see also Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

III.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S
        FDCPA, TILA, RESPA, HOEPA, FCRA,AND RICO CLAIMS WITH
        PREJUDICE.

   A.    *Merritt v. Countrywide* **compels a reversal of the premature
          dismissal of Mr. Obeng-Amponsah's TILA rescission claim.**

Defendants asserted that Mr. Obeng-Amponsah's TILA rescission claim

fails as a matter of law because he failed to plead and show an ability to tender.

Defendants also attacked Mr. Obeng-Amponsah's TILA rescission claims as time

barred.

The Court found that Mr. Obeng-Amponsah must "tender the property or a

reasonable value thereof to the creditor" in order to state a TILA claim. (AA 1362)

While the case was on appeal this Court found in *Merritt v Countrywide* that

> plaintiffs can state a claim for rescission under TILA without pleading
> that they have tendered, or that they have the ability to tender, the
> value of their loan. Only at the summary judgment stage may
> a court order the statutory sequence altered and require tender
> before rescission — and then only on a "case-by-case basis,"
> *Yamamoto*, 329 F.3d at 1173, once the creditor has established a
> potentially viable defense.

*See Merritt v. Countrywide* Fin. Corp., No. 17678, 2014 *WL* 3451299 (9th Cir. Jul.
16, 2014)

Based on *Merritt* this Court must reverse the district court's order, reinstate

Mr. Obeng-Amponsah's TILA rescission claim, and remand the case for further

proceedings.

   B.    **Plaintiff's claims for damages under TILA were not
          barred by the one year statute of limitations.**

24

TILA is a federal consumer protection statute designed to promote "the informed use of credit" and assure "meaningful disclosure of credit terms to consumers." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (quoting 15 U.S.C. §1601(a)). In his complaint Mr. Obeng-Amponsah asserted that (1) he did not receive the required disclosure statement at the time the loan transaction was consummated; (2) sometime in June 2008 he received TILADS disclosure that were in Defendants' possession and that those disclosures were forged, false, and fraudulent; (3) he did not receive a 3 day notice of recession; and (4) Defendants failed to correct the "deficiencies" when he brought them to their attention on multiple occasions. (AA 1:26, 37-38)

Defendants mounted a three-pronged attack on Plaintiff's TILA damage claims: first, Defendants argued that Mr. Obeng-Amponsah's TILA damage claim is time barred by the one year statute of limitations; second, Defendants argued that Mr. Obeng-Amponsah failed to state a claim because he failed to identify the specific disclosures required by TILA that were not provided; and third, Defendants argued that CHF, as the servicer, cannot be liable under TILA. (AA1:131-33)

In its 21 December 2009 ruling the Court agreed with Defendants. Appellant submits that the ruling does not comport with either the law of this circuit or the district court's factual and legal findings.

Mr. Obeng-Amponsah claimed that he never received the 3-day notice or the TILA disclosure statements attached to his complaint as exhibits at the time he entered into the 22 December 2004 loan transaction, and he argued that those documents thus cannot be considered on a Rule 12(b)(6) motion. The claim of non-disclosure at signing is supported by the record and the various letters from CHF asserting that CHF was investigating the matter.

Nevertheless, the court found that Mr. Obeng-Amponsah's TILA damage claims are barred by the statute of limitation because statute of limitation "typically [starts] running from the date of the loan execution." (AA 1363).

1.    The TILA statute of limitations

The statute of limitations period for a TILA damage claim begins when the violation occurs. *See* 15 U.S.C. 1640(e). As discussed above, Mr. Obeng-Amponsah did not receive the required TILA disclosures at the time the loan transaction was consummated on 22 or 24 December 2004; rather, he received the TILA statements some time after June 2008. Mr. Obeng-Amponsah filed his complaint on 14 January 2009, thus within one year from discovering the violation. The fact that CHF possessed the TILA disclosures does not preclude Plaintiff's claim of equitable tolling: the basis for Plaintiff's TILA claim is that he "did not see or receive copies of this very document which [CHF] now contends bears [her] signature." *See Botelho*, 692 F. Supp. 2d at 1177-78 (rejecting argument that

26

lender's possession of signed and filled in notice of right to cancel established delivery of same). Since CHF and its predecessors retained the loan disclosure documents at the time the transaction was consummated Plaintiff did not have a reasonable opportunity to discover the TILA violations contained within them. Further, Plaintiff had no reason to suspect any problems with his loan until he received a notice from CHF that his rate would be adjusted. Upon said disclosure Mr. Obeng-Amponsah engaged in diligent and well-documented efforts to correct the errors and work with its mortgage servicers. Based on these allegations, the statute must be tolled. *King v. State of California*, 784 F.2d 910 (1986); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) ("We will apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim.")

Further, Mr. Obeng-Amponsah also asserts a separate TILA violation due to Defendants' failure to respond to the formal rescission notice he sent on 2 June 2008 and 3 June 2008. *See* 15 U.S.C. §1635(b), 1640(a); see also (AA 1:37-38). MERS, as the purported owner of the debt, and CHF's failure to respond to Plaintiff's rescission notice was a separate violation of TILA that entitles Plaintiff to damages. *See* 15 U.S.C. §1635(b), 1640(a). Since this resulting violation occurred when MERS c/o CHF and/or LoanStar failed to respond within twenty days from the notice (i.e. in June 2008), Plaintiff's claim was brought within the

one year statute of limitations. *See Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 26 (1st Cir. 2005) (holding that, although plaintiffs conceded that TILA disclosure claims were time-barred, statute had not yet run on claims arising out of noncompliance with §1635(b)'s twenty day requirement); *Falcocchia*, 709 F. Supp. 2d at 880-81 (accord).

2.    CHF's status as a servicer without ownership rights

The court held that Plaintiff cannot state a TILA claim against CHF as a matter of law because CHF was a servicer who has never acquired ownership of the debt. (AA1363). Mr. Obeng-Amponsah's claim is that based on Defendants' pattern and practice of fraudulent and misleading conveyances it is impossible to determine the true ownership of the debt, absent vigorous discovery. The various recorded documents and the nature of MERS support Plaintiff's assertions. To the extent that the district court simply accepted Defendants' self-characterizations as sufficient to refute Plaintiff's factual assertions and the documents incorporated by reference in the complaint, the court erred.

**C.    Plaintiff's claims for damages under HOEPA were not barred by the one year statute of limitations.**

The sole basis for the dismissal of the HOEPA claim was the lack of grounds for the application of the principle of equitable tolling. (AA 1364) As shown above the court failed to apply the rule to the facts of this case, and thus erred.

28

**D.** **Plaintiff has pleaded sufficient facts, which, if proven, would entitle him to relief under the FDCPA.**

To establish a *prima facie* case for a violation of the FDCPA, Plaintiff must prove four essential elements: (1) the plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §1692a(3) for purposes of a cause of action under 15 U.S.C.A. §§1692c, 1692e(11), 1692g; (2) the "debt" arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. §1692a(6); and (4) the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A §§1692a-1692o. The first two prerequisites are not challenged in this case; the district court did not reach the fourth.

Defendants challenged Mr. Obeng-Amponsah's FDCPA claim on two separate grounds: (1) they alleged that no named Defendants meet the definition of a debt collector as a matter of law and (2) foreclosure proceedings are not debt collection practices under the FDCPA and are thus not actionable. (AA 1: 137). The district court agreed with Defendants and ruled that Plaintiff's claim is fatally flawed because no Defendant meets the Act's definition of debt collector. (AA 1367) Since the district court found that Defendants are not debt collectors as a matter of law, the district court denied leave to amend due to futility. *Id*.

1.  <u>Defendants are debt collectors not exempt from liability under the FDCPA.</u>

Congress enacted the FDCPA to address the widespread and serious national problem of debt collection abuse by unscrupulous debt collectors. *See* S. Rep. No. 95-382, at 2 (1977); *see also* 15 U.S.C. §1692(a), (e). The FDCPA is thus a broad statute intended by Congress to be enforced as written. *See Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Courts require strict adherence to the Act's plain language to accomplish the remedial and preventive goals Congress sought to accomplish through the Act and its amendments. *See Heintz v. Jenkins*, 514 U.S. 291, 297 (1995); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *Hodges v. Sasil Corporation*, 189 N.J. 210, 223(2007).

The Act's definition of "debt collector" consists of a general definition followed by a number of exceptions. *See* 15 U.S.C. §1692a(6). A "debt collector" under the Act is defined as one who attempts to collect debts "owed or due or asserted to be owed or due another," *See* 15 U.S.C. 1692a(6). A "creditor", on the other hand, is defined as one who "offers or extends to offer credit creating a debt or to whom a debt is owed": the term, however, does *not* include any person to the extent he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another. *See* 15 U.S.C. § 1692a(4), *see also Glazer v. Chase Home Finance LLC,* 704 F.3d 453 (6th Cir. 2013).

The plain language of the Act requires the fact finder to examine the defendant's legal right over the debt collected, the status of the debt at the time of acquisition, and the purpose behind the challenged collection activities in order to distinguish a 'creditor' from a 'debt collector'. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)  (For debts that do not originate with the one attempting collection, but are acquired from another, "the Act uses the status of the debt at the time of the assignment" to distinguish between a debt collector and a creditor."); *Ricotta v. Ocwen Loan Servicing, LLC,* 2008 U.S. Dist. LEXIS 13816, 2008 WL 516674, 6 (D.Colo. 2008) ("[The § 1692a(6)(F)(iii)] exception is apparently intended to exempt from the FDCPA's requirements persons who acquire a debt for reasons other than for delinquency-based debt-collection purposes."); *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 385-86 (7th Cir. 1998) ("Common sense and the plain meaning of the statute require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current."); *McKenney v. Caldwell Properties. Inc*., 548 F.3d 496 (7th Cir. 2008) ("One who acquires a "debt in default" is categorically *not* a creditor; one who acquires a "debt not in default" is categorically *not* a debt collector.")

Lest there be any doubt, Mr. Obeng-Amponsah is not asserting a claim for

wrongful foreclosure: Mr. Obeng-Amponsah is challenging the ability of the

named Defendants to collect debts that are not owed, including improper,

unauthorized, and unlawful fees and charges and to knowingly provide to others

"adverse credit information that was known to CHF and its agents to be false" (AA

1:45-46). Mr. Obeng-Amponsah asserts that these "unauthorized fraudulent

charges" were added to his account by entities other than the actual holder and

owner of the debt and that Defendants deliberately failed to correct the erroneous

charges. Further Plaintiff asserts that Defendants misrepresented the nature and

status of the debt and attempted to collect amounts that were not owed.

Specifically the record shows that on 29 February 2008 Loanstar as an agent for

the unnamed beneficiary under the DOT recorded a notice of default claiming that

Plaintiff owed $10,773.06 and directed him to contact CHF c/o Loanstar to obtain

itemization of the fees to be paid to stop the foreclosure. (AA 5:864-65) On June

2008 CHF send a reinstatement quote to Plaintiff asserting that Mr. Obeng-

Amponsah owed only $7,752.72. (AA 1254)

If Defendants were in fact attempting, as Plaintiff alleges, to collect debts

not owed under the guise that they are amounts due for services rendered by debt

collectors in the collection of a debt, their activities are not simply the action of a

trustee under a deed of trust. Mr. Obeng-Amponsah asserts that Defendants

attempted to collect these unauthorized and unlawful charges through letters and

demands for payments rather than simply seeking to liquidate the security interest. *See id*. Mr. Obeng-Amponsah also alleges that Defendants converted his property without a right of possession. (AA 5: 1112)

> **(a)** **The FDCPA does not exempt servicers from the definition of debt collectors**

The FDCPA does not define or use the term mortgage servicer. The only federal statute to define the term 'servicer' is 12 U.S.C. §2605(i)(2): "The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *See also* 15 USC §1641(f)(3) (adopting the 12 USC §2605(i)(2) definition for purposes of liability of mortgage assignee). A servicer who meets the 12 USC §2605(i)(2) definition has specific notice and disclosure responsibilities. In particular, a transferee servicer who meets the definition of 12 USC §2605(i)(2) must "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." *See* 12 USC §2605(b)(1) &(c). Neither Mr. Obeng-Amponsah nor Defendants allege that MERS, U.S. Bank, or LoanStar ever provided Mr. Obeng-Amponsah with a 12 USC §2605(i)(2) notice. Since neither MERS, U.S. Bank or LoanStar is a servicer, the court's failure to analyze their status as debt collector, was in error requiring remand.

The district court did not analyze the status of CHF as a servicer. To the extent that the court below accepted a competing factual allegation proffered by

Defendants to resolve a mixed question of law and fact at the stage of a Rule 12(b)(6) motion the court erred. Further, the cases cited by the district court with approval for a *per se* exemption of all mortgage servicers trace their support to *Perry v. Stewart Title Co.,*756 F.2d 1197, 1208 (5th Cir.1985). In *Perry* the Fifth Circuit ruled that "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *See* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1698."

*First*, the same source of legislative history reveals that Congress specifically sought to preclude reciprocal collection agreements as a way around the Statute: "The definition [of debt collector] would include "reciprocal collections" whereby one creditor regularly collects delinquent debts for another pursuant to a reciprocal service agreement, unless otherwise excluded by the Act." *See* U.S. Congr. & Admin. News, 2 -9th Cong., 1st Session, 1977, pp 1697-98. The language of the FDCPA and the 1977 legislative history thus in no way supports a rule exempting from FDCPA coverage servicers who, like CHF, participate in "reciprocal collections" with entities such as Lonstar and First American Title Insurance Company. *Second*, the nature of mortgage servicing in existence during the 1977 congressional debates bears little resemblance to the servicing practices

created by MERS and its members. To create a *per se* exemption without addressing the evolution of the industry to which the Act applies would frustrate the remedial nature of the FDCPA which was put into force to protect consumers, not debt collectors.

2.  Defendants are debt collectors not exempt from liability under Section 1692f(6).

Even were this Court to find that Defendants are not debt collectors under the general definition of section 1692a, Plaintiff has pleaded sufficient facts to support a finding that each Defendant is an enforcer of security interests and thus 'debt collectors' for purposes of section 1692f(6). Both CHF and Loanstar readily admit that they were enforcing the security interest evidenced by the deed of trust. Mr. Obeng-Amponsah alleges that Defendants prepared and recorded the fraudulent notice of default and sale in an effort to perform a non-judicial action to effect dispossession of his property. *See* 15 U.S.C. §1692f(6). Neither Defendant disputes the fact that they sold the property through a trustee's sale which, by definition, is also a non-judicial action to effect dispossession of property.

3.  Defendants were seeking to collect a debt.

Defendants argued, and Plaintiff agrees, that most federal district courts that examined the issue have found that the provisions of the FDCPA (with the exception of §1692f(6)) are inapplicable to typical non-judicial home foreclosures.

*See*, e.g., *Maynard v. Cannon*, 2008 U.S. Dist. LEXIS 46768, 2008 WL 2465466, at 4 (D. Utah June 16, 2008) (where evidence showed that defendant attorney was hired for the limited purpose of non-judicially foreclosing deed of trust, and plaintiff offered no evidence as to the frequency of defendant's security enforcement or debt collection practices, defendant's activities fall outside the FDCPA's general provisions); *Chomilo v. Shapiro,* 2007 U.S. Dist. LEXIS 67826, 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007) (holding that law firm executing nonjudicial foreclosure proceeding was enforcing a security interest rather than collecting a debt and hence fell outside the ambit of the FDCPA except for the provisions of section 1692f(6)); *Hulse v. Ocwen Federal Bank*, 195 F. Supp. 2d 1188, 1210 (D. Or. 2002) (actions taken by attorneys as part of foreclosure of trust deed "may not be challenged as FDCPA violation.")

Nevertheless, the Fourth, Fifth, and Sixth Circuits have ruled that non-judicial foreclosure activities are not exempt from the provisions of the FDCPA as a matter of law. In *Kaltenbach*, the defendant attorney initiated a non-judicial foreclosure and argued that he is solely subject to the restrictions set forth in section 1692f(6). *See Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006). In holding that "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits §1692a(6)'s general definition of a debt collector" the Fifth Circuit acknowledged the line of cases cited by defendants and reasoned that under the plain language of §1692a(6) a party's

general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector. *Id*. The Court held that "a party who satisfies §1692a(6)'s general definition of a "debt collector" is a debt collector for the purposes of the entire FDCPA even when enforcing security interests." *See id*. The Sixth Circuit endorsed the reasoning of the Fifth Circuit and found that "mortgage foreclosure is debt collection under the Act [because] [t]here can be no serious doubt that the ultimate purpose of foreclosure is the payment of money." *See Glazer*, 704 F.3d at 459, 463.

In *Wilson* the Fourth Circuit reversed the district court decision and also found that "trustees, including attorneys, acting in connection with a foreclosure can be "debt collectors" under the Act." *See Wilson v. Draper & Goldberg,* 443 F.3d 373 (4th Cir. 2006). The Fourth Circuit observed that to rule otherwise "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods." *See id. accord Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("We agree with the District Court that if a collector were able to avoid liability under the [Act] simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the [Act]."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt); *McDaniel v. South and Assc., 325 F. Supp. 2d 1210* (D. Kan. July 1, 2004*)* ("The court does not believe that the broad purpose of the FDCPA would be served if debt collectors could

avoid liability based on the character of their debt collection activities."); *Peeples v. Blatt, 2001 U.S. Dist. LEXIS 11869, No. 00 C 7028, 2001 WL 921731, at *3 (N.D. Ill. Aug. 15, 2001)* (rejecting the argument that the enforcement of a security interest is not debt collection under the FDCPA because the purpose is not to obtain money).

Whether Defendants regularly collect debts for others, or whether their principal purpose is enforcement of security interests, are factual matters not suitable for determination by a motion to dismiss.

### E. The District Court erred In dismissing Plaintiff's RESPA section 6 claim.

Plaintiff alleged that the named Defendants violated Section 6 of RESPA by failing to respond to his repeated requests about his loan, including requests for full accounting of the loan and request for investigation of improper charges. (AA 1097)

The district court appears to have accepted that Plaintiff's requests constituted "qualified written requests" under Section 6, but nonetheless dismissed the claim because Plaintiff failed to allege actual damages. (AA 1375) In dismissing the claim the district court failed to review the language of the various QWRs attached to the complaints and Plaintiff's claim that due to Defendant's failure to respond and correct the erroneous fees and charges he had to pay amounts he did not owe. (AA 5:1089, 1091-92, 1117)

Section 6(e) of RESPA requires a loan servicer, in this case CHF to take

certain actions with respect to borrower inquiries upon receipt of a qualified

written request. 12 U.S.C. §2605(e). Any reasonably stated written request that

identifies the borrower and seeks account information is a qualified written request

under RESPA. *Id*.; *see also Medrano v. Flagstar Bank*, FSB et al., 2012 U.S. App.

LEXIS 25274 (9th Cir. 2012.) Upon receipt of Plaintiff's requests for accounting

and requests for documentation about loan charges and right to collect, Section 6

required the servicer to provide the information requested, conduct an investigation,

provide an explanation or clarification of the reasons servicer believed the account

was correct, and make appropriate corrections to the account. *See* 12 U.S.C.

§2605(e); *Vought v. Bank of Am., NA*, 2010 U.S. Dist. LEXIS 114159 at *14-15

(C.D. Ill. Sep. 24, 2010) ("[T]he plain wording and the context and structure of the

statute indicate that receipt of a QWR triggers the servicer's obligations.").  CHF

failed to take these required steps or otherwise respond to Plaintiff's requests.

Instead CHF proceeded to foreclose on Plaintiff's property.

     The district court erred in immunizing Defendants from statutory liability

under remedial consumer protection laws.

     **F.**    **The District Court Erred in Dismissing Plaintiff's FCRA claims**

     The district court dismissed Plaintiff's FCRA claims because it found that

the factual allegations are "ambiguous" as to whether the CRA had notified CHF of

the disputes. (AA 1366). Plaintiff respectfully submits that the Court should have

at least given Mr. Obeng-Amponsah an opportunity to clarify his allegations rather than dismiss them on the pleading stage. *See* FRCP 15(a). Further, the gist of Plaintiff's claim is that CHF knew of the disputes, promised to investigate them but then proceeded to made the negative reporting of knowingly incorrect and disputed information. (AA 1:40-42)

Prior to 2003 the FCRA did not specifically require that furnishers like CHF investigate disputes conveyed directly to them by consumers. *See* FCRA § 623(a)(8), added by FACT Act § 312(c). However, the FCRA did (1) prohibit furnishers that reported regularly from reporting information they have determined is inaccurate and (2) required them to report corrected information. *See* FCRA § 623(a)(2).

G. **Mr. Obeng-Amponsah has pleaded a continuing enterprise and sufficient proximate cause to survive a Rule 12(b)(6) motion on his RICO claim.**

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." *See* 18 U. S. C. §1964(c). Section 1962, in turn, contains RICO's criminal provisions. Specifically, §1962(c), which Mr. Obeng-Amponsah invoked in his complaint, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity." *See* 18 U. S. C. §1962(c) "[R]acketeering

activity" is defined to include a variety of so-called predicate acts, including the

two at issue in this case—mail and wire fraud. *See* 18 U.S.C §1961(1).

Mr. Obeng-Amponsah claims are not tied soley to the origination of his

2004 loan. Rather, Mr. Obeng-Amponsah alleges that Defendants' securitization

process  and the operation of MERS resulting in the preparation and recording of

fabricated documents and the issuance of letters of demands and reinstatement

quotes containing fabricated, unearned, and/or unauthorized fees constitute the

RICO predicate offenses of mail and wire fraud in violation of §1962(c). Mr.

Obeng-Amponsah asserts that he has suffered a resulting injury because he was

forced to pay said charges and Defendants never refunded amounts paid but not

owed. Mr. Obeng-Amponsah thus asserts that he has suffered injury in the form of

wrongfully converted money — his "business or property"  — "by reason of"

Defendants' fraud -- the mailing of statements, invoices, and demands for payment

containing fabricated, unearned, and/or unauthorized charges tacked to his loan by

fraudulent means and the recordation of assignment of DOT and substitution of

trustees which sole purpose was to conceal the true identity of the debt collectors

and to spread unearned fees among related sham entities operating pursuant to

reciprocal collection agreements (AA 1102-1118).

Plaintiff also alleges that the challenged conduct continued until after the filing of his complaint. (AA 1084-85) *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U. S. ___ (2010) .

CONCLUSION

Based on the arguments stated above Appellant respectfully requests that this Court reverse the judgment below, reinstate Mr. Obeng-Amponsah's federal and state claims and remand the matter for further proceedings.

LAW OFFICES OF LARRY R. GLAZER

_____s/ Nicolette Glazer_____

Nicolette Glazer, Esq.
1875 Century Park East,
Suite #700
Century City, CA 90067
Tel: (310) 407-5353
Fax: (310) 407-5354
ATTORNEY FOR APPELLANT

**CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 32**

The undersigned attorney certifies that this brief contains 8081 words.

LAW OFFICES OF LARRY R. GLAZER

___s/ Nicolette Glazer_____

Nicolette Glazer Esq.

## CERTIFICATION OF RELATED CASES

The undersigned hereby gives notice that case No. 10-56884 Vien Ho v. Countrywide et al, currently pending before this Court is related because it involves similar factual allegations and requires interpretation and application of the FDCPA, TILA, RESPA, AND RICO to alleged unlawful debt collection practices related to mortgage loans in default.

## CERTIFICATE OF SERVICE

I hereby certify that on 19 August 2014 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties' registrants by operation of the Court's electronic filing system.

LAW OFFICES OF LARRY R. GLAZER

_____*s/ Nicolette Glazer Esq.*_____
Nicolette Glazer
ATTORNEY FOR APPELLANT